IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 06–cv–00236–EWN–MEH

STEPHANIE TROUT,

    Plaintiff,

v.

NATIONWIDE MUTUAL INSURANCE
COMPANY, an Ohio corporation,

    Defendant.

## ORDER AND MEMORANDUM OF DECISION

This is an insurance case. Plaintiff Stephanie Trout alleges that Defendant Nationwide Mutual Insurance Company acted in bad faith and breached an insurance contract in connection with coverage for injuries she sustained in an automobile accident. This matter is before the court on "Defendant's Motion for Summary Judgment," filed October 10, 2006. Jurisdiction is premised upon diversity of citizenship, pursuant to 28 U.S.C.A. § 1332 (West 2007).

### FACTS

*1.  Factual Background*

On or about December 20, 2002, Plaintiff was a passenger in a car driven by Neil Kreyche. (Def.'s Mot. for Summ. J., Statement of Undisputed Material Facts ¶ 2 [filed Oct. 10, 2006]

[hereinafter "Def.'s Br."]; *admitted at* Pl.'s Corrected Resp. to Def.'s Mot. for Summ. J., Resp. to Statement of Undisputed Material Fact ¶ 2 [filed Nov. 29, 2006] [hereinafter "Pl.'s Resp."].)  The automobile was involved in an accident, which caused Plaintiff to sustain severe injuries.  (*Id.*)  At the time of the accident, Mr. Kreyche was insured under a policy issued to his father by Defendant (the "Policy"), which was subject to limits of $100,000 per person and $300,000 per occurrence. (*Id.*, Statement of Undisputed Material Facts ¶ 3; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Fact ¶ 3.)

At an unspecified point in or about 2003, Plaintiff sued Mr. Kreyche and the owner of the automobile, Tatyana Budnikova, in Colorado state court, alleging that Mr. Kreyche and Ms. Budnikova had consumed alcohol before the accident and Ms. Budnikova gave Mr. Kreyche permission to drive the automobile, despite knowing he had consumed alcohol.  (Def.'s Notice of Removal, Ex. B ¶¶ 5–8 [Compl.] [hereinafter "Compl."] [filed Feb. 10, 2006].)  Plaintiff brought claims for negligence, negligent entrustment, negligence *per se*, and wanton and reckless disregard (the "Underlying Action").  (*Id.* ¶ 8.)  At some point after Plaintiff commenced the Underlying Action, Mr. Kreyche sought defense and indemnity coverage from Defendant.  (*Id.* ¶ 10.)

Via a letter dated January 22, 2004, Gregory Giometti, one of Mr. Kreyche's counsel, offered Plaintiff Defendant's $100,000 coverage limit under the Policy, subject to certain conditions.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 13; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Fact ¶ 13.)  The conditions were as follows: (1) a release of Plaintiff's claims against Mr. Kreyche, Ms. Budnikova, and their respective parents; (2)

Plaintiff's agreement to defend, hold harmless, and indemnify Mr. Kreyche, Ms. Budnikova, and their respective parents in any action brought by a third party; (3) Plaintiff's warrant that she has not assigned any portion of her claim to anyone other than Kaiser Permanante and agreement to release and hold harmless Mr. Kreyche, his parents, and Defendant from any sums awarded in the Underlying Action for restitution; (4) dismissal of the Underlying Action with prejudice; (5) waiver of subrogation by Kaiser Permanente; and (6) waiver of subrogation by any underinsured motorist insurance carrier. (*Id.*, Ex. A–7 [1/22/04 Letter].) Additionally, the letter memorialized the fact that another insurer of Mr. Kreyche, American Express, had offered to pay its limit of $25,000. (*Id.*)

Evidently, after receiving the letter, Plaintiff's counsel had some question as to whether the Kreyches maintained umbrella coverage or whether their homeowners' insurance would cover damages from the accident. (*See id.*, Statement of Undisputed Material Facts ¶ 16; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Fact ¶ 16.) It is undisputed that Plaintiff's counsel had "authority to try to settle" the Underlying Action. (*Id.*, Statement of Undisputed Material Facts ¶ 19; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Fact ¶ 19.) It is also undisputed that Plaintiff's counsel had authority to settle the Underlying Action for $125,000 if and only if that was the maximum amount of available insurance coverage. (*Id.*, Statement of Undisputed Material Facts ¶¶ 19–20; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Fact ¶¶ 19–20.)

On January 29, 2004, the Kreyche family counsel reported to Mr. Giometti that the Kreyches had no additional insurance covering Mr. Kreyche for the accident. (*Id.*, Statement of

-3-

Undisputed Material Facts ¶ 15; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Fact ¶ 15.)  On January 30, 2004, Mr. Giometti relayed this information to Plaintiff's counsel.  (*Id.*, Statement of Undisputed Material Facts ¶ 16; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Fact ¶ 16.)

Via a letter dated February 11, 2004, Plaintiff rejected Defendant's offer of the coverage limit, stating that she did not accept the "improperly conditioned" offer and, instead, announced her intentions of "fully pursu[ing] th[e] matter against Mr. Kreyche" due to Defendant's "bad faith posture."  (*Id.*, Statement of Undisputed Material Facts ¶ 17; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Fact ¶ 17.)  Plaintiff's counsel surmised that "following entry of judgment against Mr. Kreyche, which will likely be well in excess of [Defendant's] [P]olicy limits, Mr. Kreyche will look to his insurance carrier for failing to protect him from such a judgment." (*Id.*, Ex. A–10 at 2 [2/11/04 Letter].)

On April 1, 2005, the parties participated in a pre-trial conference before the state court in which the Underlying Action had been filed.  (*Id.*, Ex. A–15 [4/1/05 Tr.].)  During the conference, the following exchange took place between Plaintiff's counsel and the court:

> COUNSEL: [Defendant has] put [its] policy in with conditions and that is what we believe has put them in [a position of] excess [liability].
>
> COURT: So you need to negotiate those conditions?
> COUNSEL: We did not negotiate the conditions.
>
> COURT: You need to negotiate about those conditions.  Is that what you are saying?
> COUNSEL: No, not negotiate the conditions.  It [sic] was wasted on our research.  If [Defendant] made an unconditional offer just [sic] offered the [P]olicy limits . . . then that's all the insurance coverage

-4-

>   available. Once [Defendant] put conditions [sic], then we did not have to accept and that put them in an excess position to the insurance company would [sic] have to pay anything above a $100,000 verdict. And we won't know that issue is not ripe [sic] until such time as we may obtain an excess verdict.
>
> COURT: But they could also withdraw those conditions.
> COUNSEL: And they have not to this point.
>
> COURT: And that's what I am saying that you could be negotiating with them about –
> COUNSEL: From our position obviously we don't want them to withdraw the conditions and we believe that once they made that offer, they are in an excess position at that point.

(*Id.*, Ex. A–15 at 11–12 [4/1/05 Tr.].) In April 2005, the Underlying Action went to trial, where Plaintiff prevailed and was awarded $640,000 in damages. (Compl. ¶ 15.) After the entry of judgment in the Underlying Action, Defendant tendered $100,000 to Plaintiff in partial satisfaction. (*Id.* ¶ 17.) Defendant has refused "to pay any additional sums to which [Plaintiff] is entitled as a result of the judgment." (*Id.*) Mr. Kreyche did not have sufficient assets to satisfy the balance on the judgment. (*Id.* ¶ 18.) Accordingly, he and Plaintiff entered into a compromise agreement, in which Mr. Kreyche: (1) executed a promissory note requiring him to make certain payments on the outstanding judgment balance; and (2) assigned to Plaintiff "all rights, title, and interest . . . against [Defendant] for collection on the unpaid portion of the judgment entered in the Underlying [Action], including the right to prosecute those claims in a civil action and retain the proceeds from such an action." (*Id.* ¶ 20.)

## *2.      Procedural History*

On January 20, 2006, Plaintiff filed a complaint in state court asserting claims against Defendant for breach of contract and bad faith breach based on Defendant's failure to settle Plaintiff's claims in the Underlying Action. (*Id.* ¶¶ 21–24.) Plaintiff argued Defendant's offer to pay the $100,000 coverage limit subject to conditions was wrongful, because at the time Defendant made the offer, it knew that: (1) Plaintiff's injuries were catastrophic; (2) any verdict in Plaintiff's favor in the Underlying Action would likely be greatly in excess of the $100,000 limit; and, therefore, (3) Mr. Kreyche's faced personal liability for the balance between the coverage limit and any verdict in Plaintiff's favor. (*Id.* ¶¶ 13–14.) On February 10, 2006, Defendant removed the case to this court. (Def.'s Notice of Removal.)

On October 10, 2006, Defendant moved for summary judgment, arguing that it could not have settled the claims because it never had an opportunity to settle for the Policy coverage limit. (Def.'s Br.) On November 10, 2006, Plaintiff filed a response to Defendant's motion, but failed to comply with this court's practice standards. (Pl.'s Resp. to Def.'s Mot. for Summ. J. [filed Nov. 10, 2006].) On November 29, 2006, Plaintiff filed a compliant response. (Pl.'s Resp.) On December 13, 2006, Defendant filed a reply in support of its motion. (Def.'s Reply in Supp. of Mot. for Summ. J. [filed Dec. 13, 2006] [hereinafter "Def.'s Reply"].)

## ANALYSIS

## *1.      Legal Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2007); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2007). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

### *2.     Evaluation of Claims*

Insurance companies that fail to settle claims in bad faith are subject to "liability for damages arising from the breach, such as damages for excess liability and emotional distress."

*Lira v. Shelter Ins. Co.*, 913 P.2d 514, 518 (Colo. 1996).  Colorado bad faith law mandates that "insurers attempt to settle when liability becomes reasonably clear" and bars insurers from "offering less than what a reasonable person would feel entitled to."  *Kidneigh v. UNUM Life Ins. Co. of Am.*, 345 F.3d 1182, 1199 (10th Cir. 2003).  Here, Defendant argues it is entitled to summary judgment because Plaintiff "never made an offer to settle within [Defendant's] [P]olicy limits" and Defendant never had an opportunity to settle Plaintiff's claims within the Policy limits.  (Def.'s Br. at 9.)  Plaintiff maintains that because her damages "clearly exceeded" the Policy's $100,000 coverage limit, she offered to settle her claims against Mr. Kreyche for the limit.  (Compl. ¶ 11.)  Plaintiff argues that Defendant "took no steps whatsoever to settle the claims against [Mr.] Kreyche" when it should have and acted in bad faith when it offered the Policy coverage limit subject to conditions.  (Pl.'s Resp. at 14–20.)  Plaintiff's brief is disappointingly abstruse and desultory, but it appears that she argues Defendant's breach and bad faith consist of: (1) its refusal to accept her offer of settlement; and/or (2) its conditioned offer of the $100,000 Policy limit.  (*Id.*)  The court addresses each point in turn.

In Colorado, "[i]t is well established that the law imposes upon the insurer the duty to exercise diligence, intelligence, good faith, and honest and conscientious fidelity to the common interest of the insured as well as itself in determining whether to accept or reject an offer of settlement."  *Potomac Ins. Co. v. Wilkins Co.*, 376 F.2d 425, 427 (10th Cir. 1967).  As a matter of course and logic, for this duty to arise, the insurer must have received an offer of settlement.  Accordingly, the court first examines whether Plaintiff made an offer to settle her case within the Policy limits.  Plaintiff asserts that her counsel "sought payment of [Defendant's] [P]olicy limits in

January 2004 — which [Defendant] evidently treated as a request for its [P]olicy limits when it asked its retained counsel to secure an extension of time to respond." (Pl.'s Resp. at 15.)

It is undisputed that on January 13, 2004, Plaintiff's counsel asked Defendant to "let [him] know . . . if [Defendant was] going to offer the $100,000 [Defendant said] is the limit of coverage available" under the Policy. (Def.'s Br., Statement of Undisputed Material Facts ¶ 7; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Fact ¶ 7; *see also id.*, Ex. A–3 [1/13/04 Letter].) Further, on January 15, 2004, Plaintiff's counsel sent a letter to Defendant concerning the Policy limit, which *in toto* read as follows:

> This letter follows our phone conversation today, January 15, 2004, during which [Defendant] requested until January 22, 2004 to let me know whether [Defendant] is going to offer its $100,000 [P]olicy limits. I agreed to [the] requested extension.
>
> [Counsel] also discussed the production of insurance policies. I would like all insurance policies which [sic] the Kreyche's [sic] had in effect at the time of the accident, so we can make our own determination of coverage. Thanks very much.

(*Id.*, Ex. A–6 [1/15/04 Letter].)

To the extent Plaintiff bases her claims on Defendant's refusal to accept this purported "express demand for [P]olicy limits," Plaintiff is hopelessly misguided. (*See* Pl.'s Resp. at 20.) "An offer is the manifestation of willingness to enter into a bargain so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." RESTATEMENT (SECOND) OF CONTRACTS § 24 (1981). But in this case, the court need not turn to legal platitudes. Neither letter conveys any intention to settle the case. Reasonable minds could not disagree on this issue. Plaintiff must recognize this to be the case, given her own statement

that Defendant "evidently treated" her question as a request for the Policy limits. (Pl.'s Resp. at 15.) All that this court finds to be evident about Plaintiff's requests in her counsel's letters is that they are not offers to settle her case. The letters make no mention of settlement or even Plaintiff's claims themselves — they serve as mere inquiries into what sort of insurance coverage the Kreyches maintained and whether Defendant intended to offer the Policy limit. *See Brown v. Liberty Mut. Fire Ins. Co.*, 168 F. App'x 558, 563 (5th Cir. 2006) (holding that letter requesting insurer to tender its policy was not a settlement offer where letter made no mention of "settlement" and requested information about the policy limits).

At best, the letters are offers to entertain the possibility of accepting the Policy limits in settling of her claims. The facts and circumstance of the instant case are not at all analogous to the *Potomac* case, *supra*, on which Plaintiff heavily relies. In *Potomac*, the Tenth Circuit found an insurer acted in bad faith where a plaintiff twice offered to settle his claims for an amount lower than the insurer's policy limit and the insured "made continuous demand upon" the insurer "both before and during the trial" of the plaintiff's claims to settle for the policy limit, but the insurer refused to consider settlement for any amount greater than a fraction of the plaintiff's offer. 376 F.2d at 427. In this case, because Plaintiff made no offer of settlement, this court cannot find that Defendant's failure to accept any such offer was a breach or an act of bad faith.

Still, the duty to settle does not hinge on the existence of a settlement offer from a plaintiff. *See Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576, 584 (10th Cir. 1998). Accordingly, the court turns to the issue of whether Defendant's imposition of conditions on its offer of the Policy limit was a breach of its duty to settle or an act of bad faith. Plaintiff maintains that

because Defendant knew her claims caused exposure to Mr. Kreyche in excess of the $100,000 Policy limit, "[i]t was therefore incumbent on [Defendant] to promptly [sic] settle the claims for these limits," but "[Defendant] took no steps whatsoever to settle the claims" immediately. (Pl.'s Br. at 14, 15.) The court underscores Plaintiff's misstatements of the law and the facts of this case. Colorado law mandates that "insurers *attempt to settle* when liability becomes reasonably clear." *Kidneigh*, 345 F.3d at 1199 (emphasis added). Tellingly, Plaintiff provides no citation to support her argument that Defendant was obligated to settle her case immediately — and this court finds none. (*See* Pl.'s Resp. at 14–20.) It is undisputed that Defendant offered Plaintiff the $100,000 Policy limit, subject to certain conditions. (*Id.*, Statement of Additional Disputed Facts ¶ 24; *admitted at* Def.'s Reply, Resp. Concerning Additional Disputed Facts ¶ 24.) The court finds Defendant's offer to be a sufficient settlement attempt.

As to bad faith, Plaintiff points to several cases from other jurisdictions supporting the proposition that insurers have "an affirmative duty to explore settlement possibilities" and argues: (1) the conditions Defendant proffered were "unreasonable;" (2) Defendant never advised her that the conditions were negotiable; and (3) Defendant did not withdraw any of the conditions — except for the condition concerning release of Ms. Budnikova and her parents, which Defendant withdrew after Plaintiff settled her claims against same. (*Id.* at 16–18.) Plaintiff evidently ignores or is unaware of the law. To establish the tort of bad faith breach of an insurance contract, a plaintiff must show that the insurer acted both unreasonably and with knowledge of or reckless disregard of its unreasonableness. *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572 (Colo. Ct. App. 2003). First, Plaintiff has not created doubt as to the

reasonableness of Defendant's offer. The facts and circumstances of this case simply are not analogous to those which Plaintiff cites, wherein insurers repeatedly refuse plaintiffs' settlement offers and doggedly refuse to settle for more than a fraction of their policy limits. (Pl.'s Resp. at 17–18, Statement of Additional Disputed Facts ¶ 24.) Moreover, even assuming Plaintiff has raised an issue of fact as to whether Defendant acted unreasonably by imposing conditions on its offer of the Policy limit, she has wholly failed to present argument or evidence as to whether Defendant did so either knowing or recklessly disregarding its purported unreasonableness.[1] Because Plaintiff has failed to raise an issue of fact concerning the fundamental elements of her claims, Defendant is entitled to summary judgment on same.

### *3.  Conclusion*

Based on the foregoing it is therefore ORDERED that:

1. Defendant's motion (# 38) is GRANTED.

The clerk shall forthwith enter judgment in favor of Defendant and against Plaintiff, dismissing Plaintiff's claims with prejudice. Defendant may have its costs by filing a bill of costs within eleven days of the date of this order.

---

[1] This court is troubled by Plaintiff's allegations concerning Defendant's failure to settle and negotiate the conditions it set forth for settlement. Defendant maintains that Plaintiff rejected its settlement offer and "immediately foreclosed all further negotiation." (Def.'s Br. at 17.) Plaintiff's only response to this allegation is that Colorado law does not contemplate a "set up" for a law suit as a defense to bad faith. (Pl.'s Resp. at 20.) Further, as noted above, Plaintiff's counsel stated in open court that the parties "did not negotiate the conditions" and "from [Plaintiff's] position obviously we don't want [Defendant] to withdraw the conditions." (Def.'s Br., Ex. A–15 at 11–12 [4/1/05 Tr.].) Plaintiff's counsel is evidently unfamiliar with the classic maxim "he who seeks equity must do equity."

Dated this 9th day of August, 2007.

                              BY THE COURT:

                              <u>s/ Edward W. Nottingham</u>
                              EDWARD W. NOTTINGHAM
                              Chief United States District Judge